UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARY M. HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:14 CV 31 ACL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Mary Harper requested supplemental security income based on a number of physical and mental conditions. An examination of Harper's medical and mental health records support that she has received treatment for degenerative disc disease, other back problems, diabetes, anxiety and depression, and that she has been diagnosed with borderline intellectual functioning. Harper brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income under Title XVI of the Social Security Act.

An Administrative Law Judge (ALJ) found that, despite Harper's multiple severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform the requirements of occupations involving light work, such as hospital product assembler and light fixture assembler, which exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

Prior to the instant request for benefits that is under review, Harper applied for supplemental security income based on allegations that "she became disabled on June 1, 2002 due to acid reflux disease[,] pinched nerve and mitral valve prolapse." (Tr. 89.) On June 10, 2005, the ALJ in that case determined that a medically determinable impairment had been established, however, it was not severe. (Tr. 92.) The ALJ also recognized that there was some evidence that Harper "has borderline intellectual functioning" (Tr. 89), yet determined that her "borderline intellectual functioning would not affect her ability to perform unskilled work" (Tr. 92).

On June 14, 2010, Harper filed her second application for Supplemental Security Income (SSI), claiming that she became unable to work due to her disabling condition on January 1, 2003. (Tr. 193-202.) Harper's claims were denied initially on September 15, 2010. (Tr. 136-40.) Following an administrative hearing, Harper's claims were denied in a written opinion by an ALJ, dated July 26, 2012. (Tr. 18-27.) Harper then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on January 15, 2014. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Harper alleges two separate errors in support of her request for remand. She first claims that the ALJ's RFC finding is not supported by substantial evidence. Harper next argues that the ALJ erred in failing to find that Harper's borderline intellectual functioning[1] was a severe impairment.

---

[1] Borderline intellectual functioning is defined as an IQ score within the 71-84 range. *See Diagnostic & Statistical Manual of Mental* Disorders, 32 (4th ed. Am. Psychiatric Ass'n 1994) ("*DSM-IV*).

## II. Applicable Law

### II.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## II.B. Determination of Disability

To be eligible for DIB and SSI under the Social Security Act, a plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d at 1217; *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987); *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. *See* 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. *See* 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." *Id.* Age, education and work experience of a claimant are not considered in making the "severity" determination. *See id.*

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. *See* 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which requires an inquiry regarding whether the impairment prevents the claimant from performing his or her past work. *See* 20 C.F.R. § 404.1520 (e), 416.920 (e).

If the claimant is able to perform the previous work, in consideration of the claimant's RFC and the physical and mental demands of the past work, the claimant is not disabled. *See id.* If the claimant cannot perform his or her previous work, the final step involves a determination of

whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. *See* 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if she is not able to perform any other work. *See id.* Throughout this process, the burden remains upon the claimant until she adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity (RFC) assessment. *See* 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

### III. The ALJ's Determination

The ALJ found that Harper had the following severe impairments: degenerative disc disease, disc bulge at disc level L5-S1, lumbar radiculopathy, diabetes, anxiety, and depression; but no impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-21.)

As to Harper's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20CFR416.967(b) except she can occasionally stoop, kneel, crawl, and climb ramps and stairs but never ladders ropes, and scaffolds and she can have no exposure to unprotected heights.

(Tr. 22.)

In formulating Harper's RFC, the ALJ discussed the opinions of medical expert Dr. John Pollard, and consultative examiner Dr. Matthew Karshner. (Tr. 23-25.) The ALJ assigned "great weight" to the opinion of Dr. Pollard because he found it was consistent with the medical evidence. (Tr. 23.) The ALJ assigned "some weight" to Dr. Karshner's evaluation, noting that it was consistent with the medical evidence in general, Dr. Pollard's assessment, and Dr. Karshner's subsequent treatment records.[2] (Tr. 24.) The ALJ further found that Harper's subjective allegations of disabling symptoms were less than credible. (Tr. 25.)

The ALJ next found that Harper has no past relevant work. *Id.* He also concluded, based on vocational expert testimony, that there are jobs that exist in significant numbers in the national

---

[2]Harper first saw Dr. Karshner for a consultative examination in August of 2010. (Tr. 519.) Beginning in April 2011, Harper saw Dr. Karshner for treatment of her back pain. (Tr. 608.)

economy that the claimant can perform. (Tr. 26.)

The ALJ's final decision reads as follows:

Based on the application for supplemental security income protectively filed on June 8, 2010, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 27.)

## IV. Discussion

As noted above, Harper raises two claims in this action on judicial review of the ALJ's decision denying benefits. The undersigned will discuss Harper's claims in turn, beginning with the ALJ's failure to consider Harper's borderline intellectual functioning at step two of the sequential analysis.

**1.      Borderline Intellectual Functioning**

Harper argues that the ALJ erred in failing to include borderline intellectual functioning as a severe impairment. Defendant acknowledges that a consultative psychologist assessed IQ scores within the borderline range of intellectual functioning, but argues that this evidence does not constitute a basis to reverse or remand the ALJ's decision.

To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities. See 20 C.F.R §§ 404.1520(c), 416.920(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although Harper has "the burden of showing a severe

impairment that significantly limited her physical or mental ability to perform basic work activities, . . . the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Harper saw Clarence M. Bergeron, Ph.D., for a psychological evaluation on April 14, 2005. (Tr. 368-70.) Dr. Bergeron indicated that Harper completed the tenth grade and was in special education classes. (Tr. 368.) At the time of the evaluation, Harper last worked at a gas station for a two-week period, and reported that she was let go because she could not "catch on well." *Id.* Dr. Bergeron administered the Wechsler Adult Intelligence Scale-III (WAIS-III), which revealed a Verbal IQ Score of 76, a Performance IQ Score of 77, and a Full Scale IQ Score of 75. (Tr. 369.) Dr. Bergeron indicated that Harper's Full Scale IQ score is within the borderline mentally deficient range. (Tr. 370.) Dr. Bergeron stated that Harper's attention and concentration skills are consistent with her level of intelligence. *Id.* He stated that her test results are "quite consistent with her previously described level of education," and that there was "no reason to doubt the validity of her test results." *Id.* Dr. Bergeron found that Harper had mild difficulty reasoning in social situations but her other abilities were "clearly within the borderline mentally deficient range." *Id.* Dr. Bergeron diagnosed Harper with borderline intellectual functioning. *Id.*

The ALJ did not discuss Harper's diagnosis of borderline intellectual functioning at all in his opinion. Defendant, relying on *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008), contends that because Harper did not allege borderline intellectual functioning as a basis for disability when she filed her application for benefits, the ALJ was not obligated to investigate this claim.

Defendant's argument is unavailing. In *Mouser*, the claimant asked the district court to remand his case to the ALJ so that a recently issued report regarding the claimant's mental

capacity could be evaluated. 545 F.3d at 636. The Eighth Circuit held that the ALJ did not err in failing to develop the record when "the record [was] lacking in evidence that would have put the ALJ on notice that Mouser's mental capacity may be at issue." *Id.* at 639.

In this case, unlike in *Mouser*, Dr. Bergeron's report containing the diagnosis of borderline intellectual functioning was in the record at the time of the administrative hearing. In fact, the medical expert present at the administrative hearing, Dr. Pollard, acknowledged that Harper had been diagnosed with borderline intellectual capacity. (Tr. 51.) As such, the ALJ was certainly on notice that Harper's mental capacity was at issue. Further, Harper is not arguing that the ALJ failed to fully develop the record regarding Harper's borderline intellectual functioning. Rather, Harper contends that the ALJ erred in failing to find her borderline intellectual functioning was a severe impairment in light of the significant evidence of this impairment in the record before the ALJ.

In addition to Dr. Bergeron's report, there are several other references to Harper's intellectual deficits in the medical record. Harper saw Kenneth A. Ritter, Jr., M.D., on May 4, 2004, for an internal medicine examination. (Tr. 363-65.) Dr. Ritter estimated Harper's intelligence to be "below average." (Tr. 363.) He noted that Harper was a poor historian and went to school until the tenth grade. *Id.* Harper saw Joseph M. Long, Ph.D., for a psychological evaluation upon the referral of the state agency on June 25, 2009. (Tr. 440-42.) Dr. Long noted that Harper's "thinking did tend to be scattered and she struggled to provide a coherent, chronological narrative of her life." (Tr. 441.) He stated that her intellect "is estimated to be in the borderline range at best." *Id.* As to her level of intelligence, Dr. Long diagnosed Harper with probable borderline intellectual functioning, if not mental retardation. (Tr. 442.)

Harper's IQ scores place her solidly in the category of borderline intellectual functioning. *See Hutsell v. Massanari*, 259 F.3d 707, 709 n.3 (8th Cir. 2001) (noting that borderline intellectual functioning was defined as an IQ score within the 71-84 range and citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 39-40, 684 (4th ed. 1994)). *See also Dukes v. Barnhart*, 436 F.3d 923, 925 (8th Cir. 2006) (full scale IQ of 77 placed claimant in borderline intellectual functioning range); *Swope v. Barnhart*, 436 F.3d 1023, 1024 (8th Cir. 2006) (full scale IQ of 83 placed claimant in category of borderline intellectual functioning). "A diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence." *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (reversing and remanding case in which ALJ found otherwise). *See also Swope*, 436 F.3d at 1025 ("Time and again, [the Eighth Circuit] has concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert.") (internal quotations omitted).

Although the Commissioner does not dispute that Harper's IQ scores appear to place her in the borderline range of intellectual functioning, the Commissioner discounts the significance of that placement, noting that she has a work history dating back to 2002; that she works part-time as a caretaker for her mother; that she can read, write, and count money; and that she has a driver's license and drives, shops for groceries, and watches television.

First, it is significant that Harper has not worked at any position to the extent necessary to constitute past relevant work. (Tr. 25.) Harper's work experience is sporadic and consists of positions such as laborer, dishwasher, exotic dancer, buffet worker, and housekeeper. (Tr. 242-43.) Harper worked at these positions for periods of a few months, weeks and, in one case, a "few hours." (Tr. 242.) Harper contends that her limited work history is due at least in part, to

her limited intellectual capacity. This claim is supported by her self-reported claim to Dr. Bergeron that she had left a position at a gas station because she was unable to "catch on well" and was terminated. (Tr. 368.) Second, Harper's current position of part-time caretaker for her mother involves only performing housework and giving her mother medication for approximately one-and-a-half hours a day. (Tr. 56, 63.) This evidence does not depreciate the significance of her borderline intellectual functioning. Further, there is no indication in the ALJ's decision that he disbelieved the results of Harper's IQ tests.

The Commissioner argues that the ALJ's failure to consider Harper's borderline intellectual functioning is harmless because the vocational expert cited only routine assembly jobs with specific vocational preparation (SVP) ratings of 2 in response to the ALJ's hypothetical question. A failure to find severe impairments at Step 2 may be harmless where the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe. *See, e.g. Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010); *Johnson v. Commissioner of Social Security*, 2012 WL 4328413, *21 (D. Minn. July 11, 2012) (collecting cases). Here, however, the harmless error standard does not apply because the ALJ did not consider Harper's borderline intellectual functioning at all -- not at Step 2, where he should have determined whether Harper's borderline intellectual functioning was a severe or non-severe impairment, and not later in the sequential evaluation process, where he should have considered evidence of Harper's borderline intellectual functioning together with all impairments both severe and non-severe, in determining her RFC.

The ALJ also failed to consider the effect of Harper's borderline intellectual functioning on her ability to manage her diabetes. Harper's counsel questioned Dr. Pollard at the administrative hearing regarding whether borderline intellectual functioning was a "factor in a patient's ability to

understand and manage complicated diseases like diabetes." (Tr. 51.) Dr. Pollard responded that it "could be," although "there's nothing in the record relating to that." *Id.* As Harper points out, however, her treating endocrinologist, Dr. Wen, commented in his notes that Harper had received diabetes education in the past, but "did not seem to have good understanding." (Tr. 723.)

In addition, the ALJ did not include Harper's borderline intellectual functioning in the hypothetical posed to the vocational expert. When borderline intellectual functioning is supported by the record as it is here, it must be considered by a vocational expert. *See Swope*, 436 F.3d at 1025. Defendant contends that Harper retains the ability to perform the SVP level 2 positions cited by the ALJ. The Court, however, believes that question "is more appropriately answered by the vocational expert in the first instance." *Id.* at 1026.

Furthermore, the ALJ failed to consider Harper's borderline intellectual functioning in his analysis despite significant evidence in the record supporting the presence of this impairment. The ALJ's error was not harmless. Thus, the case must be remanded so that the ALJ may evaluate the nature and severity of Harper's borderline intellectual functioning.

**2.     Residual Functional Capacity**

Harper argues that the ALJ erred in his RFC determination. Specifically, Harper contends that the ALJ failed to adequately consider the effects of Harper's uncontrolled diabetes and resulting symptoms on her ability to work (*i.e.*, fatigue and frequent urination).

Harper also claims that the ALJ erred in according more weight to the opinion of the non-examining medical expert than the opinions of Harper's examining physician, Dr. Karshner. Harper notes that, although Dr. Karshner found that Harper was not fit for light duty and could only perform sedentary work on August 26, 2010, the ALJ failed to acknowledge this opinion. (Tr. 521.)

Where an ALJ errs in his failure to consider one of claimant's impairments, the resulting RFC assessment is called into question inasmuch as it does not include all of the claimant's limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001). RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations." 20 C.F.R. § 416.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). This includes a consideration of all of Harper's medically determinable severe and non-severe impairments, including her borderline intellectual functioning.

Because the ALJ did not take into consideration any evidence of Harper's borderline intellectual functioning when formulating her RFC, reversal is required. Upon remand, the Commissioner will be given the opportunity to review all the evidence under the appropriate standards when making his determination as to Harper's RFC. The ALJ should consider the effects of Harper's uncontrolled diabetes and resulting symptoms on her ability to work, as well as the effect Harper's borderline intellectual functioning has on her ability to manage her diabetes. The ALJ should also discuss the opinion of Dr. Karshner rendered on August 26, 2010 that Harper was restricted to sedentary work.

**Conclusion**

For the foregoing reasons, the Court finds that the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand,

the ALJ is directed to determine the effect of Harper's borderline intellectual functioning on her RFC.  In re-evaluating Harper's RFC the ALJ should also consider the opinion of Dr. Karshner that Harper is limited to sedentary work; and the effects of Harper's uncontrolled symptoms of diabetes.   The ALJ should then obtain the testimony of a vocational expert to determine, in light of the full record, whether Harper is capable of performing any work in the national economy.

Therefore, for the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

s/Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2015.